Could the clerk call the next case, please? Thank you. Thank you. Mr. Mazzoni, good afternoon. Thank you. Good afternoon. Mr. Justice, Madam Justice, Counsel, as read to you, my name is Joe Mazzoni. And I am here on behalf of the Metropolitan Alliance of Police asking this court to correct and reverse a decision by an ALJ denying members of the River Valley Detention Facility supervisors the right to arbitrate. This matter comes to you via collective bargaining, which ended in an impasse in the demand for arbitration. The demand was rejected with the ostensible reason being that we don't have that right, that we are not security officers under the Act. A month for labor practice was filed, and a hearing was had before Judge Hamburg-Gall at the Chicago ILRB. The section of the Act, Section 14.3p, is the operable section that we're looking for, for help in its interpretation. It's our position, and I represent the Metropolitan Alliance of Police. I'm their general counsel, and they are a union representing these supervisors at the detention facility. I'll try to be careful not to use the word correctional because they fringe and cringe when I use that word, but we're playing with these things a little bit. In order to be a security employee under the Act and be entitled to arbitration, you have to be responsible for the supervision and control of inmates at correctional facilities. That's the exact wording of the Act, at correctional facilities. It doesn't say facilities that are within some definition or some geographic location. It just says correctional facilities. During the course of the hearing, it was determined that the board has never been in a position to have to make this decision before. It appeared to me in the litigation of the base case that it was relatively simple. Is this a correctional facility? Does it incarcerate persons who happen to be juveniles, or does it not? I would note for you that the respondents in this matter never filed an appeal as regards the determination that these employees supervise and control, and that these juveniles are inmates, which are two prongs of that three P. So those, as far as I'm concerned, are kind of written in stone, and we're here on the hinging prong, which is, is the River Valley Detention Facility a correctional facility under the term of the Act? During the course of our appeals, we argued that the plain and ordinary meaning of a correctional facility should be construed. The River Valley Detention Facility houses juveniles between 10 and 17. They've had 18-year-olds. They've had 18- to 21-year-olds. They've had people that are being held pending completion of their cases. They've held people who are committed for a period of time for infractions. And people on, I'll call them inmates, but they're juveniles, and that doesn't change. They house females and males who are segregated. They run a school. They run counseling. I would note parenthetically that in one of the briefs by the Valley or the Attorney General, they argued that the employees counseled and educated these juveniles, and that is not the case. In their brief, they cite very clearly that they contract outside agencies to conduct education, to perform counseling, psychiatric, religious type of activities. So the officers, the juvenile detention officers and their supervisors whom I represent, specifically and solely and for the most part of their duties, supervise the movement and safety of these inmates. But they're not part of the Department of Corrections. They are not, and we don't think it matters. I know that there have been numerous arguments proffered to you that, you know, they're not called a correctional facility in a phone book. They are accredited by the American Corrections Association, but they're defined as a detention facility. I've got Black's Dictionary definitions. You know, may it please the court, the act says that you're a security officer if you supervise inmates at a correctional facility, not at a juvenile or an adult. The Will County Juvenile Detention Facility was modeled after the Will County Adult Detention Facility. That's not called a jail. It's not called a correctional facility, but it is a jail. At one point in time, one of our witnesses testified, I think it was around maybe 95 or 98, the juveniles were actually held in a pod of the Will County Jail.  What is a jail? Is it a freestanding building, or is it a separate, is it a part of another building? There are detention centers spread across the state. None of them connected with the Department of Corrections. In a variety of counties. I would agree with you, sir. There are two juvenile correctional facilities. There's the Illinois Department of Juvenile Corrections, or whatever it's called, and they're mentioned in the briefs. They house juveniles, but they're called a correctional facility. It is my position and argument to you that it's the function. It's not the name. The appellate court heard a case in DuPage County wherein the sheriff of DuPage County said, these correctional officers are peace officers. They've been sent to school, and they've been certified. Therefore, they belong in a unit with other peace officers. And the court clearly said it's a matter of primary function, not name that is a moving part of a decision. Their primary function was to monitor and move correctional inmates around, and the court agreed that regardless of whether they were certified as peace officers or brain surgeons, they're still correctional deputies because that's their primary function. I would argue to you that the juvenile detention facility at River Valley is as much of a jail as any county facility there is. Pictures were submitted to this court as part of the record. They are housed in cement block cells with cement block beds and bulletproof glass with bars on it with steel reinforced doors. They are transported in handcuffs, waist cuffs, and ankle cuffs. They are subject to strip searches upon entry. They are subject to strip searches whenever they leave. If they have a contact visit, they're subject to strip searches. They have segregation. They have the box. If there's an infraction, they are to march around the facility in colored uniforms. They are segregated by gang affiliation. But isn't the distinction whether or not it's pre- or post-adjudication, just like a county jail is different than a prison because it's pre-sentence, pre-judgment? Madam Justice, there are numerous inmates in the Will County Jail that are awaiting trial. There are probably thousands of inmates in the Cook County Jail that have not been adjudicated. Some of them have been sentenced back to the county jail and are serving a sentence at the county jail of a period of less than 365 days. They are inmates of a correctional facility. The same thing happens in Will County. Now, I would, again, on a more rare basis, there are 18-year-olds, 19-year-olds, 20-year-olds who are housed at the juvenile facility because it's there, and part of their adjudication requires them to serve a certain amount of time, and rather than funnel them through a correctional facility, they'll be thrown into the detention center. It is in our position that the act simply says a correctional facility, a generic correctional facility. The juvenile center in Will County, the detention center, operates no differently than the adult detention facility. There are inmates there waiting to make bond. There are inmates there that are serving time for a sentence of a misdemeanor, and there are inmates there who are simply being housed until they can be brought to trial because they can't make their bond. There is no difference other than age. There was an argument made that the officers who supervise these juveniles perform some additional function than a correctional deputy or a correctional officer, and that's simply not borne out by the record. The record shows that they source out education, they source out medical treatment, they source out counseling and religious treatment. Truly, the officers and my supervisors do their work several times a week, are there to monitor, house, and safely control juveniles who are a danger to themselves or to the community at large. So we spend a lot of time talking about what is this definition. The board has had cases, a couple, in 1985 and 2002. One found that it was a jail, one found that it wasn't. The River Valley Juvenile Detention Facility advertises itself as a maximum security facility in its brochure. Are those words supposed to tell us something? Is the fact that the, you know, there was argument that there's no barbed wire around the juvenile detention facility. Well, there's no barbed wire around the Will County Adult Detention Facility. They are almost mirror images. But when you look at the inside and you look at the word correctional facility and you look at what is housed inside of the River Valley Detention Facility, you'll see the exact same thing. There are central control. There are video monitors. The pods are set up for 24-hour, 360-degree monitoring. They do head counts twice a day. They have suicide watches. They have internal medical units. They have a SORT team, or the Special Response Team. These guys are armed with cuffs and gas, and they go in to move unruly inmates from one place to the other. They can be thrown into segregation for days at a time based on the infractions. They have lines in the ground that they have to march by. Their hands have to be in a certain place or they'll be disciplined. It almost becomes, you know, part of the union's argument was, is we don't believe that the legislature intended an absurdity. If it quacks and flies, it's probably a duck. In this particular case, when you look at the Adult Detention Facility, it's housed in a building that also houses a courthouse. I think there's a state's attorney, a clerk's office, a couple of courtrooms, and it's segregated by steel doors. In the event of a lockdown, if there's a fight, if there's searches going on, if the director of the jail orders a lockdown, those doors slam shut and he comes to a screeching halt. There are visitation hours like a jail. Some of the visitation is electronic. Some of it is contact, depending on whether it's allowed or not. It is an extremely regimented routine inside the jail. And the record was just replete. And I think both sides basically almost agreed on how this place operates. But the county would say, well, it's under the auspices of a probation department. These are not probation offices. There's an argument at the end of one of the briefs about the right to strike and whether these are essential employees that because they have the right to strike don't have the right to arbitration. If the correctional officers and supervisors struck on this jail and walked out, it would be no different than correctional deputies and their supervisors walking out of the Will County Jail. You're going to ask a question, so go right ahead. There's no difference in the net of safety that they perform between these juveniles and the public. And the juveniles that were in there, and again the stats are in the record, they're murderers, they're rapists, armed robbers, aggravated batterers, thieves. They're not nice kids. And some of these kids, and they refer to the, I think they call it a time-out room. You know, you put a murderer in segregation, you can try to call it a time-out room, but it's a murderer in segregation. And he's just as much a murderer if he were 20 years older than if he were 20 years younger. So these kinds of juveniles that are being housed, these are dangerous. The board found that they were inmates. They were specifically held and being restrained, and the public was being protected from them in this facility. And there's where we get caught up that it's just for detention and it's not a correctional facility under the words of the act. Well, see, that's the question I have. We're not interpreting these words in a vacuum or some generic sense. We're interpreting a statute. And there's rules of construction, the statute on statutes and other things. And you've got the department, a correctional facility is defined by a section of a statute. You've got security, defined by language of the statute. And what they did is read these statutes together, and this isn't. They weren't searching for them, Mr. Justice. They weren't searching for them. The only statute that needed to be interpreted was the Uniform Labor Relations Act and the definition of a security employee. That's the statute that needs to be interpreted. But the statute refers to a correctional facility. It refers to a correctional facility, and it doesn't tell you as defined by or added by. And there are, in the act, sir, there are limits of who could be covered and who is excluded. These employees were never excluded. These types of facilities, detention facilities, weren't specifically excluded, and they could have been. But it was called a correctional facility, and then there were other statutes that say what a correctional facility would have been. Will County Adult Detention Facility. It's not called a jail. And I don't think there's anybody in this room who would deny that it's a correctional facility. But why is that a correctional facility and the juveniles are not only operating in the exact same manner? There are rules for the juvenile facility, and again, in the record, the rules of the adult detention facility were adopted for the rules of the juvenile facility. Rules of operation, rules of security, how to use telephones, how to movement. They're not allowed to have forks and knives. The furniture is bolted to the ground so you can't beat each other with it. It's a jail. And again, when you don't want to come to a particular end and you can use all of these other routes to try and circumvent a plain meeting, I don't think, again, may it please this Court, I don't think we need to look at other statutes or other rules because if you go, which ones do you pick? Do you pick the position where the American Correctional Association determines that River Valley should be included? My point is you don't look at other things. You're dealing with a statute. So when you're looking at definitions within the framework of a statute that calls something something and defining something and there's not a specific definition within this one statute and another statute from the same state, Illinois, defines what a correctional facility is and it's referred to by this other statute. You know, for example, LaSalle County has a detention home. LaSalle County's detention home is under the auspices as far as the chain of command. They have court services across the probation department and the detention home. It would be our position, sir, that you don't get to that. The detention home would be part of the correctional facility. Absolutely. If it operated to this degree and in this manner, you know, there's some soft language in some of the things where this is, there used to be juvenile homes built much differently. I'm from near west side of Chicago and we had a major juvenile home down Roosevelt Road near the lakefront. And it was a home. You could walk in. You could walk out. You could visit any time. You could sit in a room. It's a home. These, again, were juveniles that weren't as restricted as these are. Absolutely. And it's a sign of the times and it's a sign of the protection that we need. And, sir, again, I would argue to you that the statute doesn't, you don't need to go outside the Illinois Labor Relations Act unless there's some confusion as to the meaning. And if it says, and if the board finds that these people supervise and move these people, and if they also find that they're inmates, and it's interesting to note, sir, that in their decision there's a significant argument against the union's attempts to use dictionary definitions. And in the decision that was given by the board in making their decision concerning what an inmate is and how these people fell under the auspices or the definition of an inmate, I'm trying to find it in here. The dictionary, the dictionary definition is the proper one to apply in this case because a section from unified code of corrections cited by the respondent is limited to defining terms for interstate correctional contact and has no broader application. So when we use the word inmate, and these have to be defined as inmates to get to the next step, which is is this a correctional facility, the board said the dictionary definition is fine because the statute said the word inmate, and they didn't have to look any further than a dictionary, and that's on page 14 of ALJ's section 1, page 14 of the ALJ's decision. The shift supervisors, the supervision and control was the next step. They easily found that they were supervisors and they controlled what they now defined to be inmates because of a dictionary definition. But apparently the word inmate is much easier to define than correctional because when they got to correctional, the first thing they say is the board has never addressed what factors render an institution a correctional facility under the act. The word de novo. But it seems to me that the word correctional, I mean I've been in here and I've watched very detailed arguments as to what an as means or a so or a to and how it changes the meaning of an entire statute. Some of those arguments were several feet above my head, freely admitted. But as a former police officer and a person who's represented police officers for the last 30 years, it seems to me, sir, that the word correctional has a plain meaning. And if you can apply a plain meaning, you should. You shouldn't use any other outside source to come to a meaning of a word unless that word is so ambiguous as to be difficult to define. Wouldn't you agree that if the statute defines it, you're supposed to use that definition? Well, there are, but the problem is, sir, is that there are numerous statutory definitions. And the River Valley Detention Facility falls into probably more than half of them. A facility to house inmates and to protect the public and themselves from harm and yada yada. And how many other sections define correctional facilities? You know, I couldn't tell you offhand, but, you know, they were argued. And the ones that, you know, some of them say, I keep coming back, sir, to Will County. Will County has a facility that this one was modeled after. They're both called the same. They're both designed the same way. They both have the same kind of internal controls and equipment and electronics. The shifts work the same way. The rules are the same. The only difference is in one facility, they're above 18. In one facility, they're 17 and below. That's the only difference. So it is my argument to you, and I won't belabor the point. It's my argument to you that the Labor Relations Act, when it says under security employee a correctional facility, it simply generically says a correctional facility, a place which restricts the freedom of an inmate, which we know is a solid definition here, and protects the public and an inmate from themselves and from other harm. Would you agree that if we rule the way that you're requesting, we are determining that every detention facility in the state is a correctional facility? Sir, if those detention facilities were designed and operated like this one, I would agree with that statement. But I'm not sure all of them are. I'm not sure. I can't sit here and say to you that these other detention facilities are modeled after jails and have the kinds of rules and regs. I mean, this place has strip searches. They go back and they look for shanks and drugs, and it is in all aspects. These are all rules now. Dealing with detention homes require a lot of that. Isn't that right? That may very well be true. But then the question I would, and I don't know if I get to ask questions because I'm sitting through them. How many are there? How many detention facilities are there? Five? Six? It's not like we're opening the door to a flood, and I think there are some threshold tests that have to be passed in order to do this. I mean, part of the record was this history of the kinds of these inmates that were rolling through the juvenile center. These are some very bad people. So to call this thing something other than what it is, is, I think, outside what the Act intended. And with that, I'll thank you for a pleasant experience today. Thank you. Thank you, Mr. Mazzoni. Ms. Quinn, good afternoon. I'm here on behalf of the Labor Board. Your Honors, the General Assembly has given us a definition of correctional facility and put it in the very place that we would logically expect to look for it, which is in the Unified Code of Corrections. And having placed that definition in the spot where it makes the most sense to put it, our legislature apparently saw no need to repeat it in the Public Labor Act. A correctional facility is where committed persons are kept and commitment is a judicially determined placement on the basis of an adjudication of delinquency or a criminal conviction. It's a determinate period with specific goals and an end point. And the General Assembly's definition in the Code of Corrections is authoritative, and it was reasonable for the Labor Board, in construing its own statute, to determine that no term of art was intended, that the corrections definition is the proper one, and that there is no need to resort to dictionaries or other outside sources to figure out what that means. And as it happens, there's also a statutory definition for detention staff, such as the staff at River Valley. They are included in the definition of probation officers in the Probation Act. The General Assembly knows how to designate something in a particular way when it wants to. And if it had intended for detention staff to be included as correctional officers, it could have done so explicitly. It didn't. It designated them as probation officers. Juvenile detention is not correction. Illinois lawmakers have supplied a definition of detention as a place of temporary care for minors for their own protection or the protection of the community. And these definitions and distinctions are reasonable policy choices for the legislature to have made. And statutory definitions control here. But even though there is no functional equivalency test, no walks-like-a-duck, quacks-like-a-duck test for what is a detention center, if you actually look through this record and you examine the duties of the staff at River Valley, it's still not a correctional facility. Because the staff's function, which is explicit in their job descriptions, in the testimony about what they do day in, day out, every day, the River Valley Manual, and the Illinois Administrative Code, it all points to the staff is there to see to these kids' emotional and physical needs. This is a staff that delivers supervision and care, not correction, not punishment. Ms. Quinn, if they were to walk out on strike, would the effect at the detention center be the same as if the correctional officers were to strike at a correctional facility? I'm not sure what the effect would be at a correctional facility. What I know is that we're not talking, first of all, about the 39 people who deliver the hands-on day-to-day care and supervision of these juveniles. We're talking about the seven people who supervise them and the four supervisory people who provide administrative and technical support. I guess I'm coming from a little different direction and thinking that the interest arbitration, the purpose of that is to avoid having people striking where the effect of their striking impairs the security of the place where they're working. And safety. As far as I can tell, these people have the right to strike because it's something that they offer to give up in exchange for getting interest arbitration. And if they were to strike, there are provisions in the Labor Act for the board to investigate to make sure that there will not be any compromise of security, no risk to the general public health and safety. And do you have those same provisions for correctional facilities? That I'm not. That I can't speak to. Are these shift supervisors, line supervisors, members of the union? The line employees? You're talking about the seven? I'm talking about the supervisors. As I understand it, they are part of their own union. They are not in this. I do not believe that they are in the same union as the 39 hands-on caregiving staff members. It's different. It's different. Did I sufficiently answer your question, Your Honor? Yeah, you did. Thank you. Thank you. I believe Mr. Mazzoni was speaking about my brief when he talked about education. It's absolutely true. The facility contracts with outside providers, the teachers from the Joliet public school system and so forth, to provide the mandatory education that the state of Illinois requires. That's what I was trying to get at in my brief. And there's a lot of documentary exhibit material in the record. But it's very interesting because throughout, the theme that's repeated over and over again is, this is a staff that, here's a quote, the staff must respond to the immediate emotional and physical needs of the juveniles in their care. I mean, that's from page 1,233 of the record. But it's throughout. It's difficult to imagine a concern for the inmate's emotional needs, immediate or otherwise, at any jail or prison. Well, you would agree with your opponent that in this age, in this day, there's a lot of concerns about security at detention homes. It's not the old type of facility. Right. It's not 20 years ago, 30 years ago, or 50 years ago. True enough. I mean, security is a major component. Security is a concern. Yes. And there's a great deal of security at River Valley. Indeed. Nevertheless, there's not a functional equivalency test. It's the statutory definition that controls here. Just one more quick question. I'm sorry. No, please. The definition of correctional facility that you're using is the definition from the statute, the Code of Corrections. The Code of Corrections. Okay. And that's saying, essentially, for purposes of this statute, a correctional facility is defined as this. As this. What is it that makes that definition in that statute translatable to another statute that merely talks generically about correctional facility without saying as defined anywhere? To the extent that the subject matter is places where people are confined, then these statutes must be read in harmony with each other. We have a definition in the one place. We don't need to redefine it or repeat it in another when we have a perfectly serviceable definition. We can read these two statutes together and harmonize. One last point I wanted to make about education, life skills, something that struck me in reading the record, the River Valley Manual points out that a lot of the kids who come through have never seen or even participated in basic household housekeeping tasks. And when you think about what a deprived environment that suggests, I mean, these are kids who may never even have seen a kitchen cleaned, much less do they know how to do it themselves in order to protect themselves from food poisoning. So the Illinois Administrative Code mandates that these kids, while in detention, receive instruction in basic life skills that many of us would take for granted, like how to clean a kitchen, how to clean a bathroom, how to keep themselves clean. And it is the mission of this staff to teach these kids how to take care of themselves. And that is education. I am mindful that my colleague has seven minutes, so unless the court has further questions, I would ask that the court reserve Ms. Quinn. Thank you. Mr. Bennett. Good afternoon. May it please the court. The issue before you today is whether the board correctly determined that River Valley supervisors are not security employees because River Valley is not a correctional facility. And we heard today from the petitioner arguments that we've heard throughout this process. And they seem to be twofold. One is that the River Valley juvenile detention facility is just like the Will County adult detention facility. So, therefore, it's a correctional facility. And the second is you can't look at other statutes, Illinois statutes, and how they define correctional facility. You've got to look online or whatever at some other legal definition to determine what it is. So let me address first the argument. And it seems to be the argument that all the evidence that, or the vast majority of the evidence that the petitioner put in the record addresses. But there are two key pieces of evidence that the petitioner never put into the record. One, that the Will County adult detention facility is a correctional facility. And two, that the officers that work at the Will County adult detention facility are statutorily entitled to interest arbitration. Nowhere in the record will you find those two facts. So you can talk about the fact that the juvenile detention facility may be designed based on the adult detention facility, that it may have similar equipment, it may have similar rooms, it may have similar bolted tables, it may have similar ping-pong tables, all these arguments that have been made. But nowhere in the record is there any evidence or any support that the Will County adult detention facility is a correctional facility as anticipated by the State Labor Relations Board or the legislature in defining the State Labor Relations Act. And in fact, when a petitioner presented their case in chief in this case, it consisted entirely of stacks of documents. One of those, or several of those documents, actually came from the Will County adult detention facility. And the only bit of evidence, the only piece in all that evidence that talked about correctional facilities with respect to the adult detention facility was a statement by the adult detention facility that they were a detention facility, they were not a correctional facility. So in the union's own evidence, there is evidence to not support this position. So again, we believe that to merely say that, well, it's a jail, it's just like the jail, it quacks like a jail, it walks like a jail, it's a jail, therefore it's a correctional facility. Well, the statute doesn't talk about jail, it doesn't say jail, the statute says correctional facility. And again, there's no evidence that the Will County adult detention facility would be or is a correctional facility as set forth in the statute. Second, their argument is, well, because it's just like the Will County jail, these supervisors, the petitioner, the petition for employees should be treated just like the correctional officers at the Will County jail. Nowhere in the record is there any evidence that the officers that work at the Will County adult detention facility have ever been determined to be statutorily entitled to interest arbitration. The record, there's no evidence of that. So even if you were to find that the juvenile detention facility is the same as the adult detention facility, you still can't make the leap that petitioner is asking you to make. And that is that we should be statutorily entitled to interest arbitration because there's no evidence to that effect. So we believe that to say, to base your argument on the fact that it's the same as the adult detention facility does not prove their case. Second, the petitioner argues that, well, here, you have to look at a dictionary definition. They've relied on the dictionary definition found at uslegal.com. They've ignored the fact that there are other definitions that can be found online for other dictionaries, such as dictionary.com or Black's Law Dictionary that maybe aren't quite as supportive of their position as uslegal.com. They've also ignored that even though the board who is in charge with interpreting their statute has determined that this is not a correctional facility, it ignores that the administrative office of the courts, probation and court services division, does not consider River Valley to be a correctional facility. Petitioner ignores that the American Correctional Association does not consider River Valley to be a correctional facility. And instead it says, you should rely on uslegal.com. They're the authority that this court should rely on to determine whether or not the River Valley is a correctional facility. But that definition, even by that definition, petitioner's case fails. In part, the uslegal.com definition is that a correctional facility is, quote, a term that may be used to refer to a jail, a prison, or other place of incarceration by government officials. They serve to confine and rehabilitate. Well, first, the definition says that it may be used. It's not a mutually exclusive definition. It may be used. There could be other facilities that meet that definition. They could be called by a different name. For example, you could have a situation where a mentally ill individual has been ordered by a court to go to a psychiatric facility. They're confined against their will, just like those people at the juvenile detention facility. They may have uniforms. They may have their movement restricted. They may be subject to searches and all that. By a petitioner's definition, those psychiatric facilities would then become a correctional facility. Even also, or second, under the uslegal.com definition, it requires incarceration. Yet there's no evidence of what incarceration means, no evidence on the record. And the Second District Appellate Court has found that just confining an individual or holding them in custody is not synonymous with incarceration. But indeed, as set forth in the board's brief and their argument here today, that incarceration implies a long-term confinement after there's been a conviction. These individuals at the River Valley Detention Facility have not been adjudicated. In fact, you heard a petitioner here today say, these are murderers. These are violent criminals. Of course they've got to be kept in a jail. Of course they've got to be kept in a correctional facility. These people have not been adjudicated. They're innocent until proven guilty. They haven't been proven guilty. Since I'm short on time, I want to move to the other issue about the right to strike and the statute and how it's been construed with respect to the right to strike. The statute sets forth certain very limited categories of employees that are automatically denied the right to strike. One of those categories being security employees. And over and over again, the Labor Board has narrowly construed those definitions to broadly interpret the act to provide a right to strike to individuals. And in this case, these individuals working at the detention facility are hired by the chief judge, and they're hired as probationary officers. There have been attempts in the past to expand the definitions in the statute to include probation officers as individuals that don't have the right to strike. Those have failed. So probation officers are not included in the group that's prohibited from striking. You ask the question of, well, what would happen if these individuals went on strike? Would that be the same as what would happen with correctional officers? Well, we don't know. There's no evidence in the record. But I can say that if with these 11 supervisors, seven of which are in charge of supervising juvenile detention officers who have the direct supervision over the juveniles, four of them are more administrative roles and a couple of them don't even have regular contact with the juveniles themselves. If they were to indicate a right to strike or indicate that they wanted to go out on strike in support of their contract demands, if the county truly believed or if the chief judge truly believed that those individuals going out on strike, there is a process in the statute that allows the chief judge to address that. And that's under Section 18 of the statute, which would allow the chief judge to petition the labor board and to make their case on an individual case-by-case basis on why, if this individual is allowed to go out on strike, how that would create a clear and present danger to the public. If the labor board then agrees that that is, in fact, that would create a clear and present danger, the labor board then is empowered to seek an injunction from the circuit court to prevent that particular individual from striking. The labor board has never used that power or authority in a broad stroke. They have looked at it and if you have a whole category of employees, for instance, one of the leading cases of the labor board involves the city of Naperville and their electrical workers, because the city provides the electrical services. In that case, the city actually sought to prevent a large group of electrical linemen from striking, saying that, of course, if the power goes out and we don't have anyone here to correct the issue, that poses a clear and present danger to the public. The labor board, instead of saying all of these individuals are precluded from striking, indicated or held that only a small amount, I think five out of the total, could be prohibited from striking, and even then, could they only be prohibited in an emergency situation. That the city could not keep them employed or prevent them from striking just to maintain the lines. So it's not a situation where we need to grant or there needs to be granted a broad-based right to interest arbitration here, because truly, if the chief judge determines in the event that there might be a strike, that it would in fact create a clear and present danger, then the chief judge has a statutory procedure that he can use to address that concern. Thank you. Thank you, Mr. Bennett. Mr. Mazzoni, rebuttal? Yes, ma'am, absolutely. I'll have to start from the back because that's what I remembered first. This right to strike business, I've negotiated hundreds of contracts over the last 30 years. Every contract with police officers, correctional officers, always contains a no-strike clause just to safeguard their ability to strike. Mr. Bennett didn't answer your question. What would happen if these guys want to strike? If an electrician goes out and strikes, their lights are out. If the juvenile detention specialists go on strike, there's, you know, they're not all murderers. There's a couple rapists, there's a few armed robbers, a couple of burglars, probably drug users. All it takes is one to go back out there, and it's happened. We've had judges release juveniles, and they'll go out and they'll kill their parents. That's the intent of the statute. You know, when Mr. Bennett came up and said they forgot two things, I got a little worried thinking, oh, man, did I really forget two things? And I didn't. You know, the idea of calling these people probation officers and using these names instead of how they function is exactly what happened in DuPage County. You can call a correctional deputy anything you'd like, but if his primary function is to guard inmates, then he's a correctional officer, regardless of what you want to call him. If a probation officer, whom they're in cahoots with, they're all under this title, if he goes on strike, he misses appointments. There's people sitting in his office, and those people are going to wait until he comes back from a strike. If these deputies or if these officers who are in charge of maintaining the security of this facility go on strike, the facility is at risk. The people around it are at risk, just like communities that don't want prisons in their community. It's for that reason. So the idea of these word changes, sometimes, you know, you mentioned, Mr. Justice, how different things are now as they were then. Well, we used to call it divorce. Well, now it's called dissolution. We used to call it alimony. Now it's called maintenance. You soften the title up a little bit, but the guy paying $1,000 a month in maintenance, you can call it anything you want. It's $1,000 out of his pocket. And when a guy gets served divorce papers, you can call it, you know, invitation to heaven. He's still going to bust his family up. The same result is there, no matter what you call it. So this idea of going to lengths to say we have to look at this statute, we have to look at this statute. Why? It's called a correctional facility. The legislature in the Labor Relations Act has made many amendments over the years to include and exclude. If they wanted a correctional facility to be a detention facility to be excluded, they could easily have made a reference to a definition. But, you know, looking at it from a simple way, this is a very narrow case about whether or not security employees within the meaning of Section 3P. Exactly. This is a right to arbitration. I mean, that's the very narrow issue we've got. Very, very narrow issue. And what we're looking for is this right to arbitration. They don't want anybody else to make decisions to end these contracts. They want to be able to negotiate. Sir, this case took place in 2010. I'm sure I had more hair and probably had a little bit of color back then. There was a chance that this argument wouldn't have happened until I retired. These things take a long time. And arbitration is a union's tool to end negotiations. And it's not like he works for us or he works for them. These are neutrals. So the result of your decision in giving these men and women the right to arbitrate simply breaks up an impasse, which we've been at for better than three years. And all the detention homes in the state. Sure enough. With that, I will end. And thank you very much for your attention in this matter today. Thank you. Thank you. We thank each of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until October. Thank you.